WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
RAYMOND E. PATRICCO, DISTRICT OF COLUMBIA STATE BAR NO. 454792
ASSISTANT UNITED STATES ATTORNEY
MARK L. WILLIAMS, NEW YORK STATE BAR NO. 4796611
TRIAL ATTORNEY, U.S. DEPARTMENT OF JUSTICE TAX DIVISION
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-9375

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>JENNIFER R. RANSOM,<br><br>　　　　　Defendant. | Case No. CR 14-0236-S EJL<br><br>**RULE 11 PLEA AGREEMENT** |

Rev. November 2014 (General)

## I.   GUILTY PLEA

A.   **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the defendant, the attorney for the defendant, and the Government[1] agree that the defendant will plead guilty to Count Five of the Indictment, which charges the defendant with Securities Fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff.

Forfeiture Allegation: In connection with the violation set out above, the defendant agrees to forfeiture of $580,780, referred to below.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Plea Agreement.  Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this Agreement, the Government, will dismiss, under Federal Rule of Criminal Procedure 11(c)(1)(A), Counts One, Four, Six through Eight, Ten, and Twelve through Fourteen of the Indictment and under Federal Rules of Criminal Procedure 11(c)(1)(B), will recommend a sentence within the Guidelines range determined by the court. The defendant agrees that the Court may consider uncharged "relevant conduct," including conduct alleged in any dismissed counts in arriving at an appropriate sentence pursuant to USSG § 1B1.3.

B.   **Oath.** The defendant will be placed under oath at the plea hearing.  The Government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

## II.   WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The defendant understands that by pleading guilty, the defendant waives the following rights: 1) the right to plead not guilty to the offense(s) charged against the defendant and to persist

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the Government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant.  If the District Court accepts the defendant's guilty plea, there will be no trial.

## III.   NATURE OF THE CHARGES

A.   **Elements of the Crime.**  The elements of the crime of Securities Fraud, 15 U.S.C. §§ 78j(b) and 78ff, as charged in Count Five, are as follows:

1. The defendant willfully used a device or scheme to defraud someone; made an untrue statement of a material fact or failed to disclose a material fact that resulted in making the defendant's statements misleading; engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person;

2. The defendant's acts were undertaken, the statement was made, the failure to disclose was done, or the deceptive practice was engaged in connection with the purchase or sale of the Alternate Energy Holdings, Inc. stock;

3. The defendant directly or indirectly used a wire transmission or the mails, in connection with these acts; and

4. The defendant acted knowingly.

"Willfully" means intentionally undertaking an act, making an untrue statement, or failing to disclose for the wrongful purpose of defrauding or deceiving someone.  Acting willfully does not require that the defendant know that the conduct was unlawful.  Evidence of the defendant's

words, acts, or omissions, along with all the other evidence, may be considered in deciding whether the defendant acted willfully.

"Knowingly" means intentional conduct that is undertaken to control or affect the price of securities. An act is done knowingly if the defendant is aware of the act and did not act through ignorance, mistake or accident.

B.    **Factual Basis.**  If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

Alternate Energy Holdings, Inc. ("AEHI") was a development stage company that planned to construct and operate a nuclear power plant in Payette County, Idaho. AEHI's principal place of business was Eagle, Idaho, within the District of Idaho. In September of 2006, AEHI became a publicly-traded company as a result of a reverse merger. AEHI's stock publicly traded on the Over-the-Counter ("OTC") Bulletin Board and on the Pink Sheets operated by Pink OTC Markets, Inc.

Co-Defendant Donald L. Gillispie was the founder, and at various times since 2006, the President, Chief Executive Officer, Chief Operating Officer, Director, and Chairman, of AEHI.

In late 2006 and in July of 2007, JENNIFER R. RANSOM thrice took and failed the National Association of Securities Dealers/Financial Industry Regulatory Authority Series 6 examination, the test required to become a licensed Investment Company Products Representative. In May of 2007, JENNIFER R. RANSOM took and passed the National Association of Securities Dealers/Financial Industry Regulatory Authority Series 63 examination, one of the tests required to become a licensed Securities Agent. Notwithstanding that she never became a licensed Securities Agent, JENNIFER R. RANSOM knew that it was wrongful and unlawful to engage in conduct that was designed to defraud or deceive investors by artificially controlling or fraudulently affecting the price of securities.

JENNIFER R. RANSOM joined AEHI in late 2007. In December of 2008, she became the Director of Administration and Secretary of AEHI. Later, she became the Vice President of Administration, and then, the Senior Vice President of Administration of AEHI. As part of her compensation, she received shares of AEHI stock.

AEHI issued Private Placement Memoranda ("PPMs"). The PPMs were written offers to sell restricted AEHI stock to accredited investors (persons with significant net worth and/or income). Restricted AEHI stock could not be resold by an investor for approximately six months to one year. Typically, the price of AEHI restricted stock offered in the PPMs was substantially discounted from the market price of unrestricted stock quoted on the OTC Bulletin Board and on the Pink Sheets.

JENNIFER R. RANSOM agreed with Co-Defendant Donald L. Gillispie, and persons known as J.H., M.D., and E.C. to a scheme to defraud or deceive AEHI investors. The scheme involved J.H., M.D., and E.C. purchasing AEHI stock on the market for the express purpose of artificially inflating the market price of AEHI stock.

As part of the scheme, Co-Defendant Donald L. Gillispie and JENNIFER R. RANSOM recruited nominees M.D., E.C., and J.H. to make purchases of AEHI stock on the market. Specifically, JENNIFER R. RANSOM personally helped recruit J.H. Co-Defendant Donald L. Gillispie, without investors' knowledge, caused AEHI to provide company funds, obtained almost exclusively from investors, to nominees M.D. and J.H. which they used to buy AEHI stock on the market and thereby attempt to artificially inflate its market price.

On September 9, 2009, AEHI issued a PPM to private investors offering AEHI stock to them at a price of $.05 per share. The PPM expired on October 31, 2009. Between September 9, 2009 and October 31, 2009, private investors bought approximately $516,885 worth of AEHI stock through the PPM.

In furtherance of the scheme to defraud or deceive AEHI investors, on September 9, 2009, JENNIFER R. RANSOM emailed J.H. (through an interstate facility) and wrote: "Will you send me you [sic] stock info. That way we can buy when you are unavailable. That will take pressure off when you can make a buy." On September 10, 2009, J.H. emailed JENNIFER R. RANSOM his Zecco.com user identification, password, and trading password. On September 10, 2009, J.H.'s Zecco.com account purchased 400 shares of AEHI stock. On September 11, 2009, J.H.'s Zecco.com account purchased 400 shares of AEHI stock. On September 16, 2009, J.H.'s Zecco.com account purchased 200 shares of AEHI stock. The purpose of these purchases was to artificially increase the market price of AEHI stock, which was trading above the PPM price.

From June of 2010 through September of 2010, a period during which attempts were being made to artificially inflate the market price of AEHI stock, JENNIFER R. RANSOM sold approximately 1,000,000 of her shares and received approximately $675,326 in return, of which approximately $580,780 was the proceeds of Securities Fraud.

JENNIFER R. RANSOM undertook the above acts with the wrongful purpose of defrauding or deceiving AEHI investors. JENNIFER R. RANSOM acted intentionally and did not act through ignorance, mistake or accident.

## IV.   SENTENCING FACTORS

A.   **Penalties.** A violation of Securities Fraud, 15 U.S.C. §§ 78j(b) and 78ff, as charged in Count Five, is punishable by a term of imprisonment of five (5) years, a term of supervised release of not more than three (3) years, a maximum fine of $250,000, and a special assessment of $100.

B.   **Supervised Release.** The Court may impose a period of supervised release. No agreement exists as to the length of supervised release.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime(s) to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

C.    **Fines and Costs.** The Court may impose a fine. No agreement exists as to the amount of the fine. The Court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

D.    **Special Assessment.** The defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing. Payment will be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 West Fort Street, Fourth Floor, Boise, Idaho 83724.

E.    **Restitution.** In addition to any fine or costs imposed, the defendant agrees to pay restitution equal to the loss caused to any victim of the charged offense pursuant to any applicable statute. The parties agree that the defendant may argue, pursuant to 18 U.S.C. § 3664(h), that the court apportion the defendant's liability in restitution to reflect her level of contribution to the loss and her economic circumstances.

F.    **Forfeiture.**

The defendant understands that the Court will, upon acceptance of the defendant's guilty plea(s), enter a forfeiture order as part of the defendant's sentence, and that the forfeiture order may include assets directly traceable to the offense(s), assets used in the commission of the offense(s), substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense(s). The defendant agrees to immediately forfeit to the United States the property set out in the Forfeiture Allegation of the Indictment and all property

and property interests which constitute proceeds obtained or retained as a result of the offense, including the following:

**Cash Proceeds.** At least $580,780 and all interest and proceeds traceable thereto as proceeds of the offense pled to.

Pursuant to 21 U.S.C. § 853(p), the United States will seek forfeiture of other properties of the defendant up to the value of any assets otherwise subject to forfeiture but which:

1.   cannot be located upon the exercise of due diligence;

2.   have been transferred, sold to, or deposited with a third person;

3.   have been placed beyond the jurisdiction of the Court;

4.   have been substantially diminished in value; or

5.   have been commingled with other property which cannot be subdivided

without difficulty.  "Other properties" will include property not otherwise forfeitable, pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982.  Forfeiture of substitute assets shall not constitute an alteration in the defendant's sentence.

The defendant agrees that the forfeitures herein are separate from all other penalties, including monetary ones.  The defendant agrees to consent to any abandonment proceeding as to forfeitable property herein, and to the entry of orders of forfeiture for such property, including civil administrative forfeiture, civil judicial forfeiture, or criminal forfeiture which may be brought against the property, and agrees to waive the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  If this Agreement is withdrawn for any reason, the defendant waives the right to contest all civil and administrative forfeitures which began before the withdrawal.

**Plea Agreement**                                    7

The defendant agrees to assist fully in the forfeiture of the foregoing assets.  The defendant agrees to complete a personal financial statement and to disclose all of the defendant's assets and sources of income to the Government, including all assets over which the defendant exercises or exercised direct or indirect control, or in which the defendant has had any financial interest, and to cooperate in obtaining any records relating to ownership of such assets when sought by the Government, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture.  The defendant further agrees that the defendant will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding or related civil forfeiture case, and that the defendant will testify truthfully in any such proceeding.

The defendant is the sole owner of the properties and property interests listed above, except as specifically set out herein.  If the defendant is not the sole owner of these properties and interests, representations are false or inaccurate, the Government may pursue any and all forfeiture remedies available at law or equity based on the violations covered by this Agreement.

The defendant agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.  The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

The defendant agrees that the forfeiture provisions of this Plea Agreement will survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this Agreement.  The forfeitability of any particular property pursuant to this Agreement shall be determined as if defendant had survived, and that determination shall be binding upon the defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.  If the crime(s) involved victims, then the defendant acknowledges and agrees that this Agreement to disgorge the defendant's wrongfully obtained criminal proceeds for the benefit of the defendant's victims is remedial in nature, and therefore that the defendant intends for the disgorgement to be completed regardless of any possible future abatement of defendant's criminal conviction.  The United States District Court for the District of Idaho shall retain jurisdiction to settle any disputes arising from application of the foregoing forfeiture provisions.

## V.    UNITED STATES SENTENCING GUIDELINES

A.    **Application of Sentencing Guidelines.**  The Court must consider the United States Sentencing Guidelines (USSG) in determining an appropriate sentence under 18 U.S.C. § 3553.  The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The Court is not a party to the Plea Agreement.  The Plea Agreement does not bind the Court's determination of Sentencing Guidelines range.  The Court will identify the factors that will determine the sentencing range under the Sentencing Guidelines.  While the Court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the Court is not bound by this Agreement, the parties agree to the recommendations and requests set forth below.

B.      **Sentencing Guidelines Recommendations and Requests.**

1.      **Acceptance of Responsibility.** If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or not make such a recommendation.

2.      **Amount of Loss.** The parties agree that the amount of loss for purposes of USSG calculations is $516,585.

3.      **Guidelines Calculations.** The parties agree that the following USSG calculations apply:

| | | | |
|---|---|---|---|
| a. | § 2B1.1(a)(2): Base Offense Level | 6 |
| b. | § 2B1.1(b)(1)(H): More than $400,000 loss | +14 |
| c. | § 2B1.1(b)(2)(A)(i): 50 or more victims | +4 |
| d. | § 2B1.1(b)(10)(C): Sophisticated means | +2 |
| e. | § 2B1.1(b)(2)(18)(A)(i): Officer of public company | +4 |
| f. | § 3E1.1(a): Acceptance of responsibility | -3 |
| g. | Adjusted Offense Level | = 27 |

4.   **Downward Departure or Variance Request by Defendant.** Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government of the defendant's intent to seek a downward departure and the defendant's reasons and basis therefor, such notice to be provided not less than 21 days before the date set for sentencing.

## VI.   COOPERATION

A.   **Truthful Information and Assistance.** The defendant promises to provide truthful and complete information to the Government and its investigative agencies, including testimony in legal and administrative proceedings, concerning the defendant's role and the roles of all others involved in offense-related behavior and other criminal activity. The defendant shall not attempt to protect anyone through false information or omission. The defendant will not falsely implicate anyone. Any intentional deviation from the truth in any of the defendant's testimony may result in prosecution for perjury and obstruction of justice. The defendant's duty under the terms of this Agreement is to tell the truth whether or not it bolsters the Government's case against any particular individual. The defendant specifically understands that this Agreement is not contingent upon the conviction of any person or the forfeiture of any property.

The defendant agrees to cooperate in good faith. This means the defendant will not only respond truthfully and completely to all questions asked, but will also volunteer all information that is reasonably related to subjects discussed. In other words, the defendant may not omit facts about crimes, participants, or defendant's involvement, and then claim not to have breached the Agreement because the defendant was not specifically asked. This Agreement is breached by any action or statement inconsistent with continued cooperation. Determination of a breach is solely within the discretion and determination of the attorney for the Government. The defendant acknowledges that any breach of this cooperation agreement will absolve the government of any

**Plea Agreement**                                   11

obligation for consideration based upon cooperation, and will constitute grounds for the government to withdraw from this Agreement. The defendant further acknowledges that the Government's decision not to grant consideration for cooperation based on a determined breach will not constitute grounds for the defendant to withdraw from this Agreement.

The defendant agrees to be available for interviews to prepare for testimony. If necessary, the defendant will submit, upon request, to government-administered polygraph examinations (and provide a personal financial statement, if requested).

The defendant agrees to identify all property related to the defendant's crimes to which the defendant has pleaded guilty, and any relevant conduct. The defendant will identify the extent of any person's or entity's (including defendant's) interest in any such property. The defendant agrees to assist in the recovery and forfeiture of such property to the United States.

B.    **Cooperation in Tax Proceedings**

The defendant agrees to cooperate with the Internal Revenue Service ("IRS") in its civil examination, determination, assessment, and collection of income taxes relating to her tax returns and any related corporate/entity tax returns for all periods for tax years 2008, 2009, and 2010, and further agrees not to conceal, transfer, or dissipate funds or property that could be used to satisfy such taxes penalties, and interest. The defendant agrees to provide the IRS any documentation in the defendant's possession and/or control requested by the IRS in connection with its civil examination, determination, assessment, and collection of such taxes prior to sentencing.

The defendant also agrees to work diligently with the IRS to resolve the liability for all taxes, interest, and penalties due and owing to the IRS, including all taxes, interest, and penalties on her individual and any related corporate/entity liabilities for the tax years 2008, 2009, and 2010. Nothing in this agreement shall limit the IRS in its civil determination, assessment, and collection of any taxes, interest, and/or penalties that the defendant may owe.

The defendant agrees to repatriate any funds or assets held in any foreign country or outside the United States as necessary to pay her tax liability and restitution.

The defendant agrees that she is liable for the penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663 on any additional tax as identified by civil examination for tax years 2008, 2009, and 2010. Defendant agrees that a civil penalty under 26 U.S.C. § 6663 may be assessed against her.

The defendant agrees to sign statute extensions (Form 872) with the IRS, prior to the time of sentencing, for tax years 2008, 2009, and 2010, if requested.

The defendant agrees that nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest and/or penalties due from the defendant for the time periods not covered by this agreement.

The defendant agrees that nothing in this agreement shall preclude or bar the Internal Revenue Service from the assessment and/or collection of any additional tax liability, including interest and penalties, determined to be due and owing from the defendant by the Internal Revenue Service for 2008, 2009, and 2010.

The defendant further agrees that any evidence, including statements and documents, provided to the United States by the defendant pursuant to a Proffer Agreement, without any limitations, can be utilized by the United States in its civil examination, determination, assessment, and collection of income taxes related to her income tax returns and any related corporate/entity tax returns, or any other civil proceeding. The United States does not deem this, in any way, to be a waiver of the defendant's attorney-client privilege with respect to any attorney.

The defendant agrees to give up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained

during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

The defendant agrees that any statements made by her to the IRS and/or in this agreement shall be admissible against the defendant without any limitation in any civil or criminal proceeding and the defendant stipulates to the authenticity and admissibility, in any civil or criminal proceeding, of any documentation provided by the defendant to the IRS. The defendant hereby waives any protection afforded by Rule 410 of the Federal Rules of Evidence and Rule II (f) of the Federal Rules of Criminal Procedure with regard to any such statements and documentation. In the event that the defendant withdraws from this agreement prior to pleading guilty and/or fails to fully comply with any of the terms of this agreement, the United States will, at its option, be released from its obligations under this agreement, but under no circumstances shall the defendant be released from the agreements and waivers made by him in this and the preceding paragraphs.

C.    **Use of Information Against Defendant.**   In exchange for the defendant's agreement, the Government will not use new information the defendant provides (pursuant to this Agreement) about the defendant's own criminal conduct.  The Government may reveal such information to the Court.  There shall be no restrictions, however, on the use of information: 1) previously known to law enforcement agencies; 2) revealed to law enforcement agencies by, or discoverable through, an independent source; or 3) in the event there is a breach of this Agreement.

D.    **Substantial Assistance Determination.**   If the Government determines, in good faith, that the defendant's cooperation amounts to "substantial assistance" in the investigation of others, the Government will request that the Court depart downward from the applicable sentencing range, pursuant to USSG § 5K1.1 and/or any mandatory minimum sentence, pursuant

to 18 U.S.C. § 3553(e). Pursuant to *United States v. Auld,* 321 F.3d 861 (9th Cir. 2002) and *United States v. Jackson,* 577 F.3d 1032 (9th Cir. 2009), the defendant understands that any motion for downward departure must be made as a reduction from the applicable guideline range or the statutory minimum sentence, whichever is greater, consistent with USSG § 5G1.1(b). This will be the base offense level regardless of whether the Government also makes a motion for a sentence below the statutory minimum sentence pursuant to 18 U.S.C. § 3553(e). The defendant further understands that if the base offense level is based on a statutory minimum sentence, no other reductions in the offense level will be allowed, including acceptance of responsibility, other than the reduction for substantial assistance. If the Government determines the defendant has not provided substantial assistance, the Government will not move for a downward departure.

The Government's final decision whether to file motions pursuant to § 5K1.1 and/or 18 U.S.C. § 3553(e) will be made after evaluating the defendant's cooperation with regards to: 1) the significance and usefulness of the defendant's cooperation, 2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant, 3) the nature and extent of the defendant's assistance, 4) any injury suffered, or any danger or risk of injury to the defendant or defendant's family resulting from the defendant's cooperation, and 5) the timeliness of the defendant's cooperation. The Government's specific recommendation will turn on the facts of the case, the sentence that likely would have been imposed absent an agreement, and the extent and value of the cooperation provided. The Government's decision not to file such a motion will not constitute grounds for the defendant to withdraw from this Agreement.

E.     **Defendant's Assumption of Risk.** The defendant agrees freely and voluntarily to cooperate with the Government, knowing the possible consequences of cooperation. The defendant's attorney knows of the defendant's cooperation and agrees that the defendant shall

**Plea Agreement**                    15

enter into this Agreement. The defendant hereby absolves the Government, including its employees, from any liability associated with this cooperation.

## VII.   WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

A.    In exchange for this Agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence.

The defendant acknowledges that this waiver shall result in the dismissal of any direct appeal or collateral attack the defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this Agreement and will allow the Government to withdraw from the Agreement and take other remedial action.

If the defendant believes the Government has not fulfilled its obligations under this Agreement, the defendant will object at the time of sentencing; further objections are waived.

B.    Exceptions:

1.    **Direct Appeal:** Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal if one of the following unusual circumstances occurs:

a.    the sentence imposed by the District Court exceeds the statutory maximum;

b.    the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or

c.    the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the District Court.

The defendant understands that the above circumstances occur rarely and that in most cases this Agreement constitutes a complete waiver of all appellate rights.

2.    **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the defendant shall retain the right to file a 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel.

## VIII.   PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States Probation Office for use in preparing a presentence report. Failure to execute releases and provide information for the presentence report violates this Agreement and relieves the Government of its obligations in this Agreement. Such failure and response by the Government will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests. Providing materially false information will subject the defendant to additional penalties, including an enhancement under USSG §3C1.1.

## IX.    NO RIGHT TO WITHDRAW PLEA

The defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this Plea Agreement or the guilty plea, regardless of the Court's actions.

## X.    CONSEQUENCES OF VIOLATING AGREEMENT

A.    **Government's Options.** If the defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation to do the following: 1) make a sentencing recommendation consistent with the terms promised in this Agreement; and 2) not to prosecute the defendant on other charges, including charges not pursued due to this Plea Agreement. Such charges may be brought without prior notice. In addition, if the Government determines after sentence is imposed that the defendant's breach of the Agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this Agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted.

If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from the Plea Agreement in its entirety.

The Government's election to pursue any of the above options cannot be a basis for the defendant to withdraw the guilty plea(s) made pursuant to this Agreement.

B. **Defendant's Waiver of Rights.** If the defendant fails to keep any promise made in this Agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this Agreement. In addition, for any charge that is brought as a result of the defendant's failure to keep this Agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations expired after the defendant entered into this Agreement.

Furthermore, if the defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare. The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XI.   MISCELLANEOUS

A. **No Other Terms.** This Agreement is the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant. This Agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the

District of Idaho.   The Government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the defendant's or defendant's counsel's request.

      B.    **Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the defendant's notification of acceptance of this Plea Agreement no later than 5:00 p.m. on March 6, 2015.

## XII.    UNITED STATES' APPROVAL

      I have reviewed this matter and the Plea Agreement.  This Agreement constitutes a formal plea offer from the Government.  Any oral discussions with the defendant and defense counsel about a plea do not constitute a plea offer.  Any written offer or Agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded.  I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:


RAYMOND E. PATRICCO         4/10/15
Assistant United States Attorney        Date

## XIII.  ACCEPTANCE BY DEFENDANT AND COUNSEL

      I have read and carefully reviewed every part of this Plea Agreement with my attorney.  I understand the Agreement and its effect upon my potential sentence.  Furthermore, I have discussed all of my rights with my attorney and I understand those rights.  No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case.  I understand that this Agreement constitutes a formal plea offer from the Government.  Any oral

discussions by me or my counsel with the Government about a plea do not constitute a plea offer. Any written offer or Agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including enter a guilty plea. I am satisfied with my attorney's advice and representation in this case.

_____      __4|9|15_____
JENNIFER R. RANSOM                    Date
Defendant

     I have read this Plea Agreement and have discussed the contents of the Agreement with my client. The Plea Agreement accurately sets forth the entirety of the Agreement. I have conveyed all written offers from the Government to the defendant pursuant to *Missouri v. Frye*, 2012 WL 932020 (U.S. March 21, 2012). I understand that this Agreement constitutes a formal plea offer from the Government. Any oral discussions by me or my client with the Government about a plea do not constitute a plea offer. Any written offer or Agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded. I concur in my client's decision to plead guilty as set forth above.

_____      __4|10|15_____
CHUCK PETERSON                        Date
Attorney for the Defendant